IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVEON WASHINGTON<br>2011 W. 81st Street<br>Cleveland, Ohio, 44102<br><br>Plaintiff,<br><br>v.<br><br>TENDER LOVING HOMECARE AND SERVICES LLC<br>c/o Brian Mitchell, Statutory Agent<br>1787 E 30th Street<br>Lorain, Ohio, 44055<br><br>-and-<br><br>SANDRA GENOVESE<br>4346 W. 137th Street<br>Cleveland, Ohio, 44135<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Traveon Washington, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

**PARTIES**

1. Washington is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.
2. Defendant Tender Loving Homecare And Services, LLC ("Tender") is a domestic limited liability corporation with its principal place of business located at 7803 Brookpark Road, Parma, Ohio, 44129.
3. Genovese was and/or is the owner, president, and/or principal of Tender.

## PERSONAL JURISDICTION

4. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

5. Washington performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

6. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), 26 U.S.C. § 7434, and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Washington's state law claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA") and the Ohio Constitution, because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

10. At all times referenced herein, Tender formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in

that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

11. At all times referenced herein, Genovese supervised and/or controlled the employment of Washington with Tender and acted directly or indirectly in the interest of Tender in relation to its employees, including controlling and/or establishing its day-to-day operations and respective compensation practices; therefore, Genovese is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and 29 § U.S.C. 203(d).

12. During all times material to this Complaint, Defendants were Washington's "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wages Standards Act ("OMWFSA").

13. At all times referenced herein, Washington was subject to individual coverage under the FLSA because her job duties required that she operate a motor vehicle weighing under 10,000lbs on interstate channels of commerce.

14. At all material times, Defendants were employers within the meaning of the FLSA and the OMFWSA.

**STATEMENT OF FACTS**

15. At all times referenced herein, Defendant operated a Home Health Care agency.

16. Washington is a former employee of Defendants.

17. Defendants hired Washington on or around August 23, 2019 as a Home Health Care Aide.

18. Subsequent to hiring Washington, Genovese required Washington to pay her $30.00 for a background check.

19. Defendants never reimbursed Washington for the cost of her own background check.

20. Washington completed an IRS Form W4 in connection with her employment with Defendants.

21. At all times referenced herein, Washington's job duties required her to transport clients to and from retail establishments and other locations for the purpose of shopping and social interaction.

22. Washington used her personal vehicle to transport Defendants' clients.

23. Washington was not paid for the fuel she used or for wear and tear on her vehicle caused by transporting Defendants' clients.

24. Washington was paid $10.00 hourly for her work as a Home Health Care Aide.

25. At all times referenced herein, Defendant's workweek ran from Sunday to Saturday.

26. Between August 23 and 24, 2019, Washington worked nine (9) hours.

27. Washington received her first paycheck of $90.00 for the nine (9) hours she worked on August 23 and 24, 2019, on August 30, 2019.

28. As a result of Defendants improperly making Washington pay $30.00 for her own background check, Washington was effectively paid $60.00, or $6.66 per hour for the work she performed on August 23 and August 24, 2019.

29. Washington's payment for her own background check was an unlawful "kick-back" to Defendants, which resulted in a subminimum wage being paid to Washington. *See* 29 CFR § 531.35.

30. Washington's actual rate of pay was even lower than $6.66 per hour once accounting for additional unlawful kick-backs to Defendants in the form of unreimbursed fuel costs and wear and tear to Washington's vehicle.

31. Washington worked 51.5 hours during the week of August 25, 2019.

32. Washington worked fourteen (14) hours between September 1, 2019 and September 3, 2019

33. Washington quit her employment with Defendants on September 3, 2019.

34. Washington decided to quit because she was unhappy with her pay.

35. Genovese became angry when Washington told Genovese that she was quitting.

36. Upon learning that Washington was quitting, Genovese yelled profanities at Washington, called her "lazy," and threatened to punch Washington in the face.

37. Genovese threatened to withhold Washington's pay if Washington "won't hold up (your) end."

38. Based on Defendant's bi-weekly pay cycle, Washington was due to receive her last paycheck on September 13, 2019.

39. Washington never received any payment from Defendant for the hours she worked between August 25, 2019 and August 31, 2019.

40. Washington never received any payment from Defendant for the hours she worked between September 1, 2019 and September 3, 2019.

41. Washington's total gross compensation during her employment with Defendants was $60.00 once accounting for the $30.00 background check fee Defendants made Washington pay.

42. Despite only paying Washington a total of $60.00, Defendants subsequently filed an information report via an IRS form W2 with the Internal Revenue Service ("IRS") falsely stating that Washington had been paid $730.00.

43. A true and accurate copy of the W2 Defendants filed with the IRS is attached hereto as Exhibit "A."

44. Defendants intentionally filed a false W2 with the IRS in order to retaliate against Washington for quitting her employment.

45. Defendants intentionally filed a false W2 with the IRS in order to shift part of their tax liability to Washington.

46. Subsequently, Washington sent correspondence to Defendant through legal counsel concerning her unpaid wages and threatening legal action ("Notice of Claims").

47. Defendant responded to Washington's Notice of Claims by alleging that Washington had been paid and by sending a copy of the alleged check and paystub ("False Check").

48. A true and accurate copy of the False Check is attached hereto as Exhibit "A."

49. The False Check was never provided to Washington.

50. Upon information and belief, Genovese sent the False Check to Washington's counsel as part of a misguided effort to cover her tracks and to dissuade counsel from continuing to pursue claims on behalf of Washington.

51. Even if Washington had received the False Check, it facially violated the FLSA and the OMFWSA.

52. The False Check was short by one hour.

53. The False Check purported to pay a flat rate of $10.00 per hour for all hours worked and did not provide overtime pay for the 11.5 hours of overtime Washington had worked during the week of August 25, 2019.

54. The False Check contained two improper and unlawful deductions that would have dropped Washington's regular rate of pay below the minimum wage.

55. The False Check contained a $100.00 deduction for a "no show fee."

56. The False Check contained a $100.00 deduction for a "restaffing fee."

57. Based on the illegal deductions made by Defendants, Washington would have been paid just $6.87 per hour for the 64 hours listed on the False Check.

58. Even if Washington had received the False Check, Defendants incorrectly reported her wages to the IRS.

59. Even if Washington had received the False Check, her actual gross pay would have been $60.00 on August 30, 2019 and $440.00 for the following two weeks, for a total of $500.00.

60. Even if Washington had received the False Check, Defendants falsely reported to the IRS that Washington had been paid $230 in compensation that Washington never actually received on account of Defendant's illegal "fees."

61. Defendants intentionally filed a false W2 with the IRS in order to retaliate against Washington for quitting her employment.

62. Defendants intentionally filed a false W2 with the IRS in order to shift part of their tax liability to Washington.

63. As a result of Defendants' unlawful conduct, Washington has suffered and continues to suffer damages.

**COUNT I: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA (29 U.S.C. § 206).**

64. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

65. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

66. As a result of Defendants unlawful kickback scheme, Defendants paid Washington less than the minimum wage for hours she worked on August 23 and August 24, 2019.

67. Defendants failed and refused to pay Washington any wages at all for the last two weeks of her employment.

68. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

69. Defendants' failure and refusal to pay Washington minimum wages for all hours Washington worked was willful, intentional, and not in good faith.

70. Washington is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

**COUNT II: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA, 29 U.S.C. § 207.**

71. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

72. The FLSA requires each covered employer such as Tender to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

73. Washington was not exempt from the right to receive overtime pay under the FLSA during her employment with Defendants.

74. Washington is entitled to be paid overtime compensation for all overtime hours worked.

75. At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay all overtime due to its employees for their hours worked in excess of 40 hours per week.

76. Washington worked 11 hours of overtime during the week of August 25, 2019.

77. Defendants failed to Washington overtime, or any wages at all, for the work she performed during the week of August 25, 2019.

78. As a result of Defendants' failure to properly compensate Washington at a rate not less than 1.5 times her regular rate of pay for all work performed in excess of 40 hours in a work week, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

79. Defendants' failure and refusal to pay Washington overtime wages for all overtime hours Washington worked was willful, intentional, and not in good faith.

80. Washington is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

**COUNT III: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.**

81. Washington incorporates by reference the allegations in the preceding paragraphs.

82. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

83. At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

84. Washington was an employee of Defendants as that term is defined by the OMFWSA.

85. O.R.C § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

86. Defendants failed to pay Washington overtime for hours she worked in excess of 40 per week.

87. In denying Washington overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

88. As a direct and proximate result of Defendant's unlawful conduct, Washington has suffered and will continue to suffer a loss of income and other damages.

89. Having violated the OMFWSA, Defendants are joint and severally liable to Washington pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and

reasonable attorneys' fees. Additionally, Defendants are joint and severally liable to Washington for an amount equal to twice her unpaid wages. O.R.C. § 4111.14(J).

**COUNT IV: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.02, *et seq*, BASED ON FAILURE TO MINIMUM WAGE.**

90. Washington incorporates by reference the allegations in the preceding paragraphs.

91. The OMFWSA requires that covered employees be compensated for every hour worked in a workweek including payment of all earned overtime compensation. See O.R.C. §§ 4111.01, et seq.

92. Respondents violated the OMFWSA by failing to pay Washington wages approximating at least the Ohio minimum wage for all hours worked by Washington.

93. As a direct and proximate result of Respondents' unlawful conduct, Washington has suffered and will continue to suffer a loss of income and other damages.

94. Having violated the OMFWSA, Respondents are liable to Washington pursuant to O.R.C. § 4111.10 for the full amount of her unpaid minimum wages; liquidated damages; and for Washington's costs and reasonable attorneys' fees.

**COUNT V: VIOLATION OF THE OHIO PROMPT PAY ACT. (Asserted Against Defendant Tender Loving Homecare And Services, LLC Only).**

95. Washington incorporates by reference the allegations in the preceding paragraphs.

96. During all times material to this complaint, Tender was covered by the Ohio Prompt Payment Act, R.C. § 4113.15 ("OPPA") and Washington was employed by Tender within the meaning of OPPA

97. The OPPA requires that Tender pay Washington all wages, including unpaid minimum wages, on or before the first day of each month, for wages earned by Washington during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth

day of the month, for wages earned by Washington during the last half of the preceding calendar month. See O.R.C. § 4113.15(A).

98. At the conclusion of her respective term of employment with Tender, Washington was not paid wages, within 30 days of performing the work, after they requested said payment. See O.R.C.§ 4113.15(B).

99. Washington's unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled paydays.

100. In violating the OPPA, Tender acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

**COUNT IV: VIOLATION OF THE INTERNAL REVENUE CODE: WILLFUL FILING OF A FRAUDULENT INFORMATION RETURN.**

101. Washington incorporates by reference the allegations in the preceding paragraphs.

102. Pursuant to the Internal Revenue Code, 26 U.S.C. § 7434, Defendants were responsible for submitting accurate wage statements for Washington to the IRS.

103. Defendants willfully and knowingly filed a fraudulent W-2 form with the IRS that over reported the wages actually paid to Washington and/or the amount actually owed to the IRS.

104. Specifically, Defendants filed a false W2 with the IRS that stated that Defendants had paid Washington $730.00, when in reality, Washington had only been paid $60.00.

105. Alternatively, Defendants knowingly and willfully filed a false W2 with the IRS that stated that Washington had been paid wages that were never actually paid to her because of Defendants' illegal fees and deductions.

106. Defendants willfully filed a false information report in order to retaliate against Washington for quitting and/or to conceal their violations of minimum wage and overtime laws.

107. Defendants knowingly failed to prevent and/or correct the fraudulent W-2 from being filed with the IRS, despite their duty to do so.

108. As a result of Defendants' actions, Washington is entitled to statutory liquidated damages in the amount of $5,000.00.

109. Pursuant to 26 U.S.C. § 7434(d), Washington has submitted a copy of this Complaint to the IRS.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Traveon Washington requests judgment against all Defendants and for an Order:

a. Awarding Plaintiff unpaid minimum wages and overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

c. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

d. Awarding Plaintiff $5,000.00 pursuant to 26 U.S.C § 7434(b);

e. Awarding pre-judgment and post-judgment interest as provided by law;

f. Awarding reasonable attorneys' fees and costs; and

g. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/Chris P. Wido*

Chris Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Traveon Washington*

**JURY DEMAND**

Plaintiff Traveon Washington demands a trial by jury by the maximum number of jurors permitted.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**